DONALD SPECTER (SBN 83925)
dspecter@prisonlaw.com
THOMAS M. NOSEWICZ (SBN 317849)
tom@prisonlaw.com
PRISON LAW OFFICE
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Facsimile: (510) 280-2704

JESSICA VALENZUELA SANTAMARIA (SBN 220934)
jsantamaria@cooley.com
ADDISON M. LITTON (SBN 305374)
alitton@cooley.com
MARK A. ZAMBARDA (SBN 314808)
mzambarda@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000

KENDALL DAWSON WASLEY (SBN 252294)
kendall@dawsonwasleylaw.com
PMB 233, 1520 E. Covell Blvd.
Davis, CA 95615
Telephone: (408) 827-5024

Attorneys for Plaintiffs

JAMES R. WILLIAMS (SBN 271253),
County Counsel
DOUGLAS M. PRESS (SBN 168740),
Assistant County Counsel)
ARYN PAIGE HARRIS (SBN 208590),
Deputy County Counsel
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street
East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendant
Santa Clara County

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| BRIAN CHAVEZ and BRANDON BRACAMONTE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA,<br><br>Defendant. | Case No. 1:15-cv-05277-RMI<br><br>**Joint Motion for Final Approval of Class Action Settlement**<br><br>Date: March 14, 2019<br>Time: 1:00 PM<br>Magistrate Judge Robert M. Illman |

# INTRODUCTION

In October 2018, after engaging in extensive settlement negotiations, the parties entered into a Consent Decree to settle class claims for injunctive relief in this suit concerning conditions in the Santa Clara County Jails ("Jails"). The Court granted preliminary approval of the Consent Decree on November 27, 2018. Plaintiffs and Defendant, by and through their counsel, now respond to class-member comments about the settlement and request final approval of the Consent Decree. If the Court grants final approval, the Consent Decree will dispose of all class claims in the case.

The Court should grant final approval of the Consent Decree because, as the Court has already ruled, "the proposed settlement is the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Order Granting Mot. for Prelim. Approval of Consent Decree and Notice to the Class at 1–2, ECF No. 77. Further, the Consent Decree adequately addresses the class claims for injunctive relief because it includes a detailed forty-six page Remedial Plan addressing dental, medical and mental health care, suicide prevention, non-mobility disability accommodations, restrictive housing, and use of force. *See* Consent Decree, ECF No. 74, Ex. 1. The Remedial Plan requires Defendant to remedy the deficiencies alleged in the class action complaint. *See* First Amended Class Action Complaint for Injunctive and Declaratory Relief, ECF No. 9.

The Court has received thirteen letters commenting on the proposed settlement, including two from non-class members. The comments support the need to settle this case and provide timely relief to address the systemic inadequacies in Defendant's

medical, dental, and mental health care system, safety and security practices, accommodations for persons with non-mobility disabilities, and use of restrictive housing. None of these comments show that the Consent Decree is not the product of good-faith negotiations conducted at arm's-length.

There is also no evidence that the Consent Decree will fail to achieve the primary objectives of the class claims for injunctive relief — constitutionally adequate dental, medical, and mental healthcare, reasonable accommodations for people with non-mobility disabilities, the adoption of a comprehensive use of force policy, and reforms to the use of restrictive housing. Moreover, Plaintiffs' counsel will vigorously enforce the terms of the Consent Decree. The Court should therefore grant final approval of the settlement.

## BACKGROUND

As explained in the Motion for Preliminary Approval of Consent Decree, Plaintiffs are inmates who are or have been incarcerated in the Santa Clara County Jails (hereinafter, "Jails") representing a class of "[a]ll people who are now, or in the future will be, incarcerated in the Santa Clara County jails" and a subclass of "[a]ll people who are now, or in the future will be, incarcerated in the Santa Clara County jails and who have a psychiatric and/or intellectual disability, as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794." Order Certifying Action as Class Action, at 1, ECF No. 34. Defendant is the County of Santa Clara, which is responsible for the operation of the jails.

This action was filed on November 18, 2015. A First Amended Complaint was filed on January 20, 2016, alleging that conditions in the Jails violated inmates' constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, Plaintiffs alleged that the County does not provide inmates with access to adequate medical, dental, or mental health care; fails to prevent unnecessary and excessive use of force against inmates; imposes on inmates the harmful and excessive use of solitary confinement; and discriminates against inmates with non-mobility disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

On February 19, 2016, Defendant filed its answer to the First Amended Complaint denying the material allegations and asserting affirmative defenses. The parties' Joint Motion for Class Certification was granted on September 20, 2016.

The parties agreed to suspend discovery for the purpose of settlement negotiations. Plaintiffs and Defendant agreed that the experts who had been hired by Defendant before the initiation of this action were appropriate ones to investigate and opine on the adequacy of dental, medical, and mental health care delivered in the Santa Clara County Jails, as well as the extent and propriety of use of force against inmates incarcerated by Defendant and other issues raised by the action. The six experts were Todd Wilcox, M.D., as the expert on medical care; Bruce Gage, M.D., as the expert on mental health care; Jay Shulman, D.M.D., M.A., M.S.P.H., as the expert on dental care; Lindsay M. Hayes, M.S., as the expert on suicide prevention; Jeffrey Schwartz, Ph.D., as the expert for use of force in the jails; and James Austin, Ph.D., as the expert for the jail classification system.

The proposed Consent Decree, which incorporates the Remedial Plan, was submitted to the County Board of Supervisors on September 27, 2018. The Board of Supervisors approved the Consent Decree on that date.

On November 27, 2018, the Court granted the parties' joint motion seeking preliminary approval of the Consent Decree and found that it was "the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Order Granting Mot. for Prelim. Approval of Consent Decree and Notice to the Class at 1–2, ECF No. 77. The Court directed Defendant "to post the Notice in English, Spanish, and Vietnamese in all housing units in such a manner as to make the notice visible to all inmates." *Id.* at 2. The Court set a hearing regarding final approval of the Consent Decree for February 27, 2019, *id.* at 2–3, and later continued the hearing to March 14, 2019. ECF No. 98.

On December 20, 2018, Captain Amy Le and Lieutenant Mark Padget filed declarations affirming the Defendant's compliances with the Court's November 27, 2018 order. *See* ECF Nos. 83 & 84. Additionally, Defendant has filed contemporaneous declarations with this motion updating the Court that the tri-lingual Notice of Class Action was posted for more than 30 days and will remain posted until at least April 1, 2019. *See* Declarations of Captain Amy Le and Lieutenant Mark Padget. The Class Notice described the key terms of the settlement and the proposed agreement regarding attorneys' fees and advised class members that the Court would consider written comments when deciding whether to approve the settlement. *See* ECF No. 74 at 63–64. Defendant also provided copies of the Court's order granting preliminary approval of the settlement, the full Consent Decree, the Remedial Plan,

and Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses to individuals who requested them. *See* Declarations of Captain Amy Le & Lieutenant Mark Padget at ¶¶ 4–5.

To date, 13 letters have been filed with the Court. *See* ECF Nos. 85–97. Each letter is addressed below.

## SUMMARY OF KEY PROPOSED SETTLEMENT TERMS

The following are some of the key terms of the Consent Decree:

1. Based on the reports of the experts, the parties have agreed on a detailed Remedial Plan that Defendant will be required to implement. The Remedial Plan provisions cover all the substantive areas in dispute: medical care, dental care, mental health care, the use of force, the use of solitary confinement, and discrimination against people with non-mobility disabilities. The Remedial Plan is attached to the Consent Decree as Exhibit A. Among other things, it requires the County to (a) provide constitutionally-sufficient medical and mental health care, (b) provide additional safeguards to reduce suicides by people in custody, (c) update its dental care policies, (d) identify people with non-mobility disabilities and ensure they receive appropriate accommodations, (e) limit the use and duration of restrictive housing, (f) and implement a revised use of force policy.

2. The parties will agree on joint neutral experts who will monitor compliance with the Remedial Plan and assist in dispute resolution. The experts will complete comprehensive reviews of Defendant's progress and will have reasonable access to all parts of the Jails, including confidential, voluntary interviews with any staff and inmates, and documents on request.

3. Plaintiffs' counsel will also monitor compliance with the Consent Decree and the Remedial Plan. Plaintiffs' counsel will be able to inspect the Jails at least twice per year and have reasonable access to relevant information, including documents as well as interviews with staff and inmates.

4. In the event of a dispute, the parties have agreed on an informal dispute resolution process, including involvement of a mediator as appropriate. The Court will retain jurisdiction to address motions to enforce compliance should the dispute resolution process fail.

5. The County has agreed to pay Plaintiffs' counsel $1,600,000 for merits fees and expenses and $200,000 per year for monitoring fees and expenses.

## ANALYSIS

**A. The settlement is fair, reasonable, and adequate.**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts must give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). "[S]ettlement [is] the preferred means of dispute resolution" and that "is especially true in complex class action litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

In reviewing proposed class-action settlement agreements, there is an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. *Harris v. Vector Mktg. Corp.*, No. C-08–5198 EMC,

2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). "Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).

Other factors courts consider in assessing a settlement proposal include: "[1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). The district court must explore these factors comprehensively to satisfy appellate review, but "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026.

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citing *Officers for Justice*, 688 F.2d at 625). Thus, a district court's decision to approve a class-action settlement may be reversed "only upon a strong showing that the district court's decision was a clear abuse of discretion." *Id.* (citation omitted).

Here, the Court already found that the settlement is "the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." Order Granting Mot. for Prelim. Approval of Consent Decree and Notice to the Class at 1–2, ECF No. 77. Thus, the Consent Decree is entitled to a presumption of fairness. *Harris*, 2011 WL 1627973, at *8.

The Court should grant the Consent Decree final approval because it provides substantial equitable relief to class members. Defendant has agreed to settlement terms that directly address the class claims in this case, including the delivery of minimally adequate dental, medical, and mental health care, reasonable accommodations for persons with non-mobility disabilities, improvements to restrictive housing, and the implementation of a revised use of force policy. *See* Remedial Plan, ECF No. 74, Ex. A of Ex. 1. The settlement was reached after several years of negotiations between the parties, who were zealously represented by their experienced counsel throughout this litigation. Decl. of Donald Specter in Supp. of Pls.' Unopposed Mot. for Attorneys' Fees and Expenses at ¶¶ 2–6, ECF No. 81. The settlement was also reached after experts inspected Defendant's jails and opined on the adequacy of dental, medical, and mental health care delivered in the Santa Clara County Jails, as well as the extent and propriety of use of force against inmates incarcerated by Defendant and other issues raised by the action.

Further, the outcome of the litigation and the extent of any relief that the class might be awarded if the case went to trial is uncertain. Plaintiffs faced substantial burdens in demonstrating a current and ongoing violation of inmates' constitutional rights on a system-wide basis. And proceeding through pre-trial motions, trial, and

probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter. Given the relief achieved and the risks and costs involved in further litigation, the Consent Decree represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be given final approval. *See* Fed. R. Civ. Pro. 23(e)(2).

**B. None of the comments refute the presumption that the settlement is fair, reasonable, and adequate.**

Thirteen letters were submitted to the Court. Two class members each wrote twice, ECF Nos. 88 and 89 (letters of Joey Oaxaca Martinez); 87 and 92 (letters of Mark Weber), including one that was on behalf of "the inmates of housing unit 7B." ECF No. 92. Another letter was signed by three class members. ECF No. 91. Two community members also submitted letters. ECF Nos. 94 (letter of Christine Clifford) and 96 (letter of Jose Valle of Silicon Valley De-Bug).[1]

Most letters did not provide substantive comments on the terms of the Consent Decree or Remedial Plan. Four of the letters were either a request for the plan, ECF Nos. 86, 88, or did not address the settlement directly. ECF Nos. 89, 97. Another letter asked for cash awards to be given to people in Defendant's jails. ECF No. 91. Other letters reported individual experiences at Defendant's jails and briefly addressed various aspects of how the plan should be implemented. ECF Nos. 85, 87, 93, 95. Two

---

[1] Though the authors of these two letters are not members of the class here, it is appropriate to address them here because they express concerns on behalf of the class. Ms. Clifford's son is incarcerated by Defendant and Silicon Valley De-Bug is a well-known advocacy group for people in the jails. *See, e.g.,* De-Bug San Jose, *Bring Civilian Oversight to the Jails*, available at http://www.debugsanjose.org/#/bring-civilian-oversight-to-the-jails/

letters asked that the settlement address Defendant's classification system. ECF Nos. 90, 92.

The two letters from non-class members took different approaches. The letter from Christine Clifford asked for the settlement to cover additional areas and that the Court should include in the settlement "more measured and reliable systems for identifying and reporting on interventions, and to seek far more involvement and feedback from detainees, their families, and the community." Ms. Clifford also asked that the settlement include "more detailed steps for classification, more accountability for grievances, more inclusion of meaningful programming for all detainees, and more attention to identifying and serving people with disabilities as defined by IDEA." ECF No. 94.

The other non-class member letter, from Jose Valle of Silicon Valley De-Bug, included a detailed review of the administrative management section of the Remedial Plan and results of surveys taken after hunger strikes in Defendant's jails. ECF No. 96.[2]

None of these letters is a basis for rejecting the settlement. The letters that reported problems with conditions at the jails underscore the need for the agreed-upon

---

[2] In addition to these letters, Plaintiffs' counsel received a phone call about the settlement from class member Jason Carl Smith, COE221, on January 15, 2019. Mr. Smith indicated that he did not object to the settlement, but asked that it cover more ground, including the schedule for serving food in the special management unit for people with serious mental illness, that leftover and extra food be given to people in that unit because they lack money to go to canteen, that canteen orders for people with serious mental illness not be cancelled for including items with caffeine, that the jail provide earplugs to ameliorate noise in the units, and to ensure that grievances by people in the special management unit for serious mental illness be submitted to an ADA coordinator.

remedy in this case. And the letters addressing classification outside of restrictive housing raise issues that have never been part of this case. In addition, the letter asking for damages to be paid to class members should not prevent approval of the settlement here: the class only sought declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2), and the settlement does not bar class members from pursuing individual damage claims. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) ("[T]he general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events.").

Finally, suggestions that the settlement does not go far enough are not a basis for rejecting it. "Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. The settlement here is fair, reasonable, and adequate and this Court should approve it.

**C. Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses should be granted.**

Defendant has agreed to pay Plaintiffs' attorneys' fees and out of pocket expenses in the amount of $1,600,000. This amount — which reimburses Plaintiffs' counsel for some but not all of their actual hours spent and out-of-pocket expenses — is fair and reasonable in light of the extraordinary results obtained through this litigation, the lengthy and detailed settlement negotiations, and the difficulty and

complexity of the issues involved. There have been no objections from class members to the proposed attorneys' fees and expenses. Accordingly, the Court should grant Plaintiffs' Unopposed Motion for Attorneys' Fees and Expenses, ECF No. 79, pursuant to Federal Rule of Civil Procedures 23(h).

## CONCLUSION

As the Court has already ruled, the Consent Decree is the produce of arm's-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation. Thus, it is entitled to a presumption of fairness. Further, the comments by class members fail to demonstrate that the Consent Decree does not fairly, reasonably, and adequately resolve the class's claims for injunctive relief. Accordingly, the parties request that the Court grant final approval of the Consent Decree and grant Plaintiffs' Unopposed Motion for Attorneys' Fees.

Respectfully submitted,

Dated:   February 27, 2019        Cooley LLP

*/s/ Jessica Valenzuela Santamaria*
Jessica Valenzuela Santamaria (220934)
Addison M. Litton (305374)
Mark A. Zambarda (314808)

Dated:   February 27, 2019        Prison Law Office

*/s/ Donald Specter*
Donald Specter (83925)
Thomas M. Nosewicz (317849)

| | | |
|---|---|---|
| Dated: | February 27, 2019 | Kendall Dawson Wasley |
| | | */s/ Kendall Dawson Wasley*<br>Kendall Dawson Wasley (252294) |
| | | *Attorneys for Plaintiffs* |
| Dated: | February 27, 2019 | Aryn Paige Harris, Deputy County Counsel |
| | | */s/ Aryn Paige Harris*<br>Aryn Paige Harris (208590)<br>Deputy County Counsel |
| | | *Attorneys for Defendant*<br>*County of Santa Clara* |

## ATTESTATION

I hereby attest that I have on file the holograph signature of the signature indicated by a "confirmed" signature (/s/) within this e-filed document.

Dated: February 27, 2019         Cooley LLP

/s/ *Jessica Valenzuela Santamaria*
Jessica Valenzuela Santamaria (220934)