1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

EUREKA DIVISION

7
8

BRIAN CHAVEZ, *et al.*,

Case No. 15-cv-05277-RMI

9

Plaintiffs,

10

v.

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

11

COUNTY OF SANTA CLARA,

Re: Dkt. No. 99

12

Defendant.

13
14

On February 27, 2019, Plaintiffs and Defendant County of Santa Clara ("Defendant") filed

15

a Joint Motion for Final Approval of Class Action Settlement, ECF No. 99. The matters came

16

before the Court for a hearing on March 14, 2019. Having considered the briefing in support of

17

both motions, responses from class members, relevant legal authority, and the record in this case,

18

the Court **GRANTS** the Joint Motion.

19

Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified

20

class may be settled … only with the court's approval." District courts must balance multiple

21

factors when assessing whether a settlement is "fair, adequate and free from collusion" under Rule

22

23(e). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). These factors include

23

"the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further

24

litigation; the risk of maintaining class action status throughout the trial; the amount offered in

25

settlement; the extent of discovery completed and the stage of the proceedings; the experience and

26

views of counsel; the presence of a governmental participant; and the reaction of the class

27

members to the proposed settlement." *Id.* at 1026. "This list is not exclusive and different factors

28

may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,

1376 (9th Cir. 1993).

The Court finds that a majority of the factors favor settlement, and that the settlement is fair, reasonable, and adequate. The Plaintiffs case is strong here, as shown by serious settlement discussions that began shortly after the complaint was first filed in this case that resulted in a voluntary stay of discovery. However, Plaintiffs face substantial burdens in demonstrating a current and ongoing violation of inmates' constitutional rights on a system-wide basis. And proceeding through pre-trial motions, trial, and probable appeal would impose risks, costs, and a substantial delay in the implementation of any remedy in this matter. Because settlement discussions began early in this case, the parties engaged in only limited discovery, but did work together collaboratively to ensure that Plaintiffs' counsel had access to the jails, personnel who worked there, and people incarcerated there, as well as allowing several subject-matter experts access to the jail.

Next, Plaintiffs' counsel has extensive experience in prisoners' rights litigation and complex class action litigation and believe that the settlement here is in the best interest of all plaintiffs. Defendant is represented by county counsel who similarly is experienced and knowledgeable in this type of litigation. And, as the Court has previously found, the settlement is "the product of arms-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." ECF No. 77 at 1–2. The Court finds no reason to reconsider this previous finding.

The reaction of class members to the settlement is further support for final approval. Defendant complied with the Court's order regarding the provision of notice to the class. ECF Nos. 83 & 84. Class members were afforded an opportunity to comment or object to the settlement, and this Court held a hearing on the matter. Though approximately 3,000 individuals are incarcerated at Defendant's jails, the Court received only thirteen letters about the settlement, include two from non-class members. *See* ECF Nos. 85–97. Most letters detailed individual experiences with the deficiencies identified in the case; these letters weigh in favor of approving the Consent Decree. Other letters suggested additional matters that the settlement should cover or thoughts on how the settlement should be implemented. No letter clearly objected to the

United States District Court
Northern District of California

1   settlement. The Court is satisfied that the concerns in the comments are adequately addressed by

2   the Consent Decree. The Court also notes that the settlement will not bar individual damage

3   claims by class members. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) ("[T]he

4   general rule is that a class action suit seeking only declaratory and injunctive relief does not bar

5   subsequent individual damage claims by class members, even if based on the same events."). The

6   overall positive reaction to the Consent Decree therefore weighs in favor of approval.

7           Weighing against final approval is the risk of maintaining class action status throughout

8   the trial. The Court approved the parties' joint application for class action status on September 20,

9   2016, ECF No. 34, so it is unlikely that Defendant would contest class certification if the Court

10  rejects the proposed Consent Decree. *See* Fed. R. Civ. P. 23(c)(1)(C) (allowing court to revisit

11  certification before final judgment).

12          The Court further finds that the Consent Decree meets the requirements of the Prison

13  Litigation Reform Act at 18 U.S.C. § 3626(a). In so doing, the Court finds that the relief contained

14  therein is narrowly drawn, extends no further than necessary to ensure the protection of the federal

15  constitutional and statutory rights of Plaintiffs, and is the least intrusive means necessary to

16  accomplish those objectives.

17          The Court finds that the agreed-upon award of $1,600,000 for fees and expenses is fair and

18  reasonable. Plaintiffs sought to address deficiencies in dental, medical and mental health care,

19  reasonable accommodations for persons with non-mobility disabilities, the use of restrictive

20  housing, and use of force. The Consent Decree does just that; it includes a detailed, forty-six page

21  Remedial Plan covering those topics.

22          The fee request reasonably reflects the time and labor required to litigate this matter and

23  was calculated pursuant to the lodestar method. *See* Decl. of Donald Specter in Supp. of Pls.'

24  Unopposed Mot. for Attorneys' Fees and Expenses at ¶¶ 8–13, ECF No. 81. Although counsel

25  represented the Plaintiffs without charge, Plaintiffs' counsel exercised the same billing judgment

26  and discretion accorded to private clients. *Id.* at ¶ 8; *see Gonzalez v. City of Maywood*, 729 F.3d

27  1196, 1202 (9th Cir. 2013).

28          The agreed-upon fee award also fairly reflects the novelty and difficulty of the questions

3

1  presented, the skill required in litigating this complex case, and the fact that Plaintiffs' counsel

2  litigated this matter on a contingency basis and expended significant hours and out-of-pocket

3  expenses doing so.

4  Pursuant to Federal Rule of Civil Procedure 23(h), class members were informed about the

5  fee request in the Class Notice, and a full copy of Plaintiffs' Motion for Attorneys' Fees and

6  Expenses was made available to all class members who requested it. ECF Nos. 83 & 84. Class

7  members were afforded an opportunity to comment or object to the fees request, and this Court

8  held a hearing on it. No class member objected to the fee request.

9  Accordingly, the Court hereby **GRANTS** the Joint Motion for Final Approval of the Class

10  Action Settlement.

11  **IT IS SO ORDERED.**

12  Dated: March 20, 2019

13

14  _____

15  ROBERT M. ILLMAN
United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

4